# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| IN RE: | ROBERT EDWARD BALDEWICZ, III, | Case No. 06-21117 |
| | Debtor. | |
| IN RE: | DORIS MARIE MAXWELL, | Case No. 06-21226 |
| | Debtor. | Chapter 13 |

## ORDER OVERRULING TRUSTEE'S OBJECTION TO ATTORNEY'S FEES AS PREMATURE

The same counsel represents both debtors in the two above-captioned matters. In both cases, counsel submitted a fee disclosure indicating that his firm had charged the debtor $2,500 in attorneys' fees. This amount—$2,500—is the amount set by the Eastern District of Wisconsin Bankruptcy Court's "Court Policy Regarding Presumed Reasonable Fees" for cases filed after October 17, 2006 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, or "BAPCPA"). The trustee objected, arguing that the $2,500 fee was too high for representation on what appeared to the trustee to be relatively simple Chapter 13 matters. On June 6, 2006, the Court heard argument in both matters from the trustee, the U.S. Trustee and counsel for the debtor. The Court now overrules the trustee's objection as premature.

1

# I.  Factual Background

## A.  Fee arrangement

### 1.  *Matter # 06-21117–Baldewicz*

On March 21, 2006,[1] debtor Baldewicz filed his Chapter 13 bankruptcy petition.  The debtor's counsel signed the petition.  Counsel attached to the petition what is known as a Form B201 disclosure form ("Disclosure of Compensation of Attorney for Debtor(s)").

The Form B201 indicated that the attorney had agreed to accept $2,500 for legal services "rendered to or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case . . . ."  Part 5 of the form states that in return for whatever fee an attorney agrees to accept, the attorney agrees that he or she will conduct an "[a]nalysis of the debtor's financial situation," and will "render[] advice to the debtor in determining whether to file a petition in bankruptcy;" "prepar[e] and fil[e] . . . any petition, schedules, statement of affairs and plan which may be required;" and "represent[] . . . the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof."  Section 5 also provides a space for the attorney to list additional services he or she may provide.  In this case, the attorney listed the following additional services to be provided in exchange for the $2,500 fee:

---

[1]  Because both debtors filed their Chapter 13 petitions after October 17, 2005, the law which governs these cases is the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Thus, any statutory references in this decision refer to particular portions of Title 11 as amended by BAPCPA.

2

Negotiations with secured creditors to reduce to market value; exemption planning, preparation of reaffirmation agreements and applications as needed; preparation and filing of motions pursuant to 11 USC 522(f)(2)(A) for avoidance of liens on household goods.

In section 6 of the Form B201, the attorney noted that he was *not* agreeing that the $2,500 fee would cover the following services: "[r]epresentation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding."

### 2. *Matter # 06-21226–Maxwell*

On March 27, 2006, debtor Maxwell filed her Chapter 13 bankruptcy petition. Again, the debtor's counsel signed the petition. Counsel attached a Form B201 disclosure form which was, but for the debtor's name and the date, identical to the Form B201 he had filed in the Baldewicz matter.

### B. Trustee's objections

On April 21, 2006–one month after debtor Baldewicz filed his petition–the Chapter 13 standing trustee filed an objection to the $2,500 fee which debtor Baldewicz's counsel had disclosed on the Form B201. The trustee noted that the debtor's Chapter 13 plan proposed to pay $3,120 to creditors over the 36-month life of the plan, with $2,489 going to debtor's counsel ($2,500 minus the $11 the debtor had paid counsel pre-petition) and only $475 going to unsecured creditors. Thus, the trustee argued, the debtor's attorney would receive more than five (5) times the amount the unsecured creditors would receive.

Further, the trustee argued, the debtor's counsel had charged the $2,500 fee

3

for a case that involved only thirteen items of personal property, no real estate, and only one secured debt (the collateral for which was scheduled to be surrendered)–in other words, according to the trustee, a "simple and straightforward" Chapter 13. The trustee concluded by arguing that, while the Eastern District's Policy Regarding Presumed Reasonable Fees provided for a presumed reasonable fee of $2,500 in Chapter 13 cases, it also provided that a party in interest could ask the court to determine the actual reasonable fee in a particular case, and thus require the attorney to submit a detailed fee application and attend a hearing.

On May 2, 2006–again, about a month after the order for relief–the trustee filed an objection to the $2,500 fee which counsel disclosed in the Maxwell matter. Regarding debtor Maxwell, the trustee noted that the debtor proposed to pay $3,588 to unsecured creditors over the 36-month life of the plan. Again, $2,489 would go to counsel, leaving a payment to unsecured creditors after the trustee's fees of $380. The trustee argued that in this case, counsel stood to receive more than six (6) times the amount that the unsecured creditors would receive.

In debtor Maxwell's matter, the trustee argued that the $2,500 fee would cover a case involving no real estate, only eight (8) items of personal property and no secured debt, rendering the matter even less complicated than the one counsel was handling for debtor Baldewicz.

C.    Debtors' responses

On May 3, 2006, debtor Baldewicz and his counsel filed a response to the

4

trustee's objection. Debtor Maxwell and the same counsel filed her response to the trustee's objection on May 16, 2006. The arguments in both responses are similar. The debtors argued that the trustee had presented no evidence that counsel had not done, and would not do, the work required, or that the work that had been done was inadequate. The debtors further argued that a month into the case was too soon to ask the Court to determine whether the $2,500 fee was, in fact, reasonable in these cases. The debtors cited their counsel's experience, conscientiousness, and proven commitment to clients. Debtor Baldewicz argued that the fact that he chose to surrender the collateral on a secured claim did not mean that no attorney work was involved–"[a]rranging surrender and ensuring no violation of stay is part of counsel's duties." Each debtor pointed to various particular facts in his or her case which could present complications as the case moved forward, such as on-going domestic support obligations, employment problems, traffic citations which could turn out to be non-dischargeable, and the existence of certain claims which would require objection.

D.    Hearing

On June 6, 2006, the Court held a hearing on the trustee's motions in both cases. Counsel for debtor Baldewicz provided the trustee with a detailed accounting of the services that had been provided up to that date.[2] As to services that might be

_____

[2]    Before the hearing, counsel had submitted an accounting in only the Baldewicz matter. At the hearing, the Court asked that counsel provide a similar accounting in the Maxwell matter; counsel did so on June 14, 2006. *See* docket no. 22. As of the date of the hearing, counsel had earned $972.00 in fees in the Maxwell

5

provided in the future, however, Baldewicz's counsel had estimated what might be needed, and how much time each possible service might take. Each side expanded upon the arguments made in their briefs.

In addition to expanding on the arguments from her briefs, the trustee argued that the fee debtor's counsel charged in Maxwell was even more problematic that the one charged in Baldewicz. The trustee noted that, because debtor Maxwell previously had received a Chapter 7 discharge, she was not eligible to file for Chapter 7 when she retained counsel–implying that the task of determining whether a Chapter 7 or Chapter 13 filing was more appropriate was one counsel did not have to perform for debtor Maxwell. Further, the trustee noted that unlike debtor Baldewicz's case, debtor Maxwell's case did not involve any secured debt or surrenders of property.

At the end of the hearing, the Court took the matters under advisement.

II. **Legal Background**

A. The Law Governing Fees

1. *The Statute and Federal Rules*

Section 329 of Chapter 11 requires that "[a]ny attorney representing a debtor" in a bankruptcy case

> shall file with the court a statement of the compensation paid or
> agreed to be paid, if such payment or agreement was made after one
> year before the date of the filing of the petition, for services rendered or
> to be rendered in contemplation of or in connection with the case by

_____

matter.

6

such attorney, and the source of such compensation.

11 U.S.C. § 329(a). The section further provides that if the compensation "exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to– (1) the estate . . . or (2) the entity that made such payment."

Rule 2017 of the Federal Rules of Bankruptcy Procedure specifically provides that if any party in interest (or the court itself) requests a hearing on the reasonableness of pre-petition payments to counsel, or if the debtor, the U.S. Trustee, or the court itself request a hearing on the reasonableness of post-petition payments to counsel, the court may–after notice and a hearing–determine whether such fees are excessive. Section 11 U.S.C. § 330 of the statute provides guidance to courts in determining whether such fees are excessive. It lists the following factors for the court to consider:

(A)   the time spent on such services;
(B)   the rates charged for such services;
(C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Further, § 330 prohibits courts from allowing compensation for "unnecessary

7

duplication of services," or for services that were not "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." Finally, for Chapter 13 cases involving individual debtors, the statute allows the court to approve "reasonable" compensation to the debtor's attorney "for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section."

        2.     *The Case Law*

Case law provides other criteria for courts to use in determining the reasonableness of fees. These criteria include:

* the time and labor required;

* the novelty and difficulty of the question;

* the skill required to perform the legal services properly;

* the preclusion of other employment by the acceptance of this employment;

* the customary fee;

* whether the fee is fixed or contingent;

* time limitations imposed by the client or other circumstances;

* the amount involved and the results obtained;

* the experience, reputation and ability of the attorney;

* the desirability of the case;

* the nature and length of the professional relationship with the client;

8

and

\*        awards in similar cases.

In re: Novitzke, 120 B.R. 483, 485-487 (Bankr. W.D. Wis. 1990), citing Matter of

Reliable Investors Corp., 60 B.R. 98 (Bankr. W.D. Wis. 1986). *See also* Johnson v.

Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).

B.        "Presumptively Reasonable" Fees

Federal Rule of Bankruptcy Procedure 2016 requires a party who seeks to be

compensated for services in a bankruptcy matter to file an application explaining, in

detail, the services rendered, time expended, expenses incurred and amount

requested.  If the party seeking compensation is the debtor's counsel, the rule

requires that he or she must disclose to the U.S. Trustee certain information about

the fee.

In this district, however, debtors' attorneys do not have to submit fee

applications if the fee they charge for a Chapter 13 matter is $2,500 or less.  The

appendix to the local rules for the Eastern District contains a section entitled

"Court's Policy Regarding Presumed Reasonable Fees."[3]  This policy states that for

Chapter 13 cases filed on or after October 17, 2005 (as these two were), an attorney

need not file a Rule 2016 fee application if the fee he is charging is $2,500 or less, as

long as no party files an objection.  If there is an objection, or if the court requests it,

the attorney must file a fee application in accordance with Local Rule 2016, and the

--------------------------------------------------

[3] The appendix is can be found at
http://www.wieb.uscourts.gov/appendix_as_of_05_23_06.pdf.

9

court must hold a hearing. The rule states that the burden of proof to demonstrate that the fee is reasonable is on the attorney who claims the fee.

The practice of establishing a presumptively reasonable fee is not unique to this district. Judge Mary France of the Middle District of Pennsylvania has considered the topic in depth. In <u>In re: Smith</u>, 331 B.R. 622 (Bankr. M.D. Penn. 2005), Judge France explained the practice of establishing presumptively reasonable fees as follows:

> . . . Most services required of an attorney in a Chapter 13 case may be characterized as "normal and customary." *In re Shamburger*, 189 B.R. 965, 969-70 (Bankr. N.C. Ala. 1995); *see also [In re] Szymaczak*, 246 B.R. [774] at 780 [Bankr. D.N.J. 2000)]. Accordingly, some courts have adopted local practice orders or rules permitting attorneys to be paid presumptively reasonable and standardized fees for basic legal services without filing a fee application. *See generally*, Keith M. Lundin, *Chapter 13 Bankruptcy* § 294.1 (3d ed. 2002) . . . . Use of a flat fee is an attorney's offer to provide basic services for an agreed amount in exchange for receiving compensation without the necessity of filing a fee application. Because a fee application is not required if a flat fee at or under the presumptive amount is charged, practitioners often refer to these arrangements as "no-look" fees. *See, e.g., In re Wright*, 290 B.R. 145, 147 (Bankr. C.D. Cal. 2003).

<u>Id.</u> at 629.

In <u>Matter of Geraci</u>, 138 F.3d 314, 321 (7th Cir.), *cert. denied*, 525 U.S. 821 (1998), the Seventh Circuit found that "it is not an abuse of discretion for the [bankruptcy] court to set a presumptively reasonable fee and then to require documentation to substantiate a fee in excess of that amount."[4] In so finding, the

---

[4] The <u>Geraci</u> decision involved an attorney who represented debtors in no-asset Chapter 7 matters, not Chapter 13 matters. But numerous courts, as discussed above, use presumptively reasonable fees in Chapter 13 matters for the

10

Seventh Circuit looked to *Collier on Bankruptcy* for its reasoning. It quoted *Collier* as explaining that, "[b]y setting a standard maximum fee, courts seek to save time both for themselves and for debtors' attorneys in cases that are routine and quite similar to each other." Id., *quoting Collier on Bankruptcy* ¶ 329.04[1][a], at 329-16 & 239-17. By the same token, "an attorney always has the right to demonstrate that additional fees [above the presumptively reasonable fee limit] should be awarded if the standard fee does not compensate the attorney fully for the time expended in the case on an hourly basis." Id.

The fact, then, that the Eastern District has set a presumptively reasonable, or "no-look" fee, does not mean that the trustee cannot object to the reasonableness of that fee, or that a court cannot review it. "[A]bsent compliance with the Bankruptcy Code and Rules, an attorney has no absolute right to an award of compensation." In re: Clark, 223 F.3d 859, 863 (8th Cir. 2000), *quoting* Anderson v. Anderson (In re Anderson), 936 F.2d 199, 204 (5th Cir. 1991). It is well-established that "[t]he bankruptcy court has the broad power and discretion to award or deny attorney fees, and, indeed, a duty to examine them for reasonableness." Id. at 863 (citations omitted). As the Seventh Circuit has noted, "The decision to reduce fees under section 329 is within the sound discretion of the bankruptcy court, which should weigh the equities of the case in determining whether the fees are unreasonable or excessive." Matter of Wiredyne, Inc., 3 F.3d 1125, 1128 (7th Cir.

---

same reasons they are used in Chapter 7 matters.

11

1993).

III.   **Application of the Law to the Facts of This Case**

When a party objects to the reasonableness of attorneys' fees under § 329, "it is the attorney himself who bears the burden of establishing that the fee is reasonable." Matter of Geraci, 138 F.3d 314, 318 (7th Cir.), *cert. denied*, 525 U.S. 821 (1998). Thus, in this case, the debtors' counsel bears the burden of establishing that the $2,500 fee is reasonable under the circumstances of this case.

A.   Section 330 and Case Law Factors

The Court first applies the factors laid out in § 330 and the case law.

1.   *Time Spent on Services*

At this early stage, one cannot tell the amount of time spent on services over the life of the case. Certainly a great deal of work in Chapter 13 cases occurs prior to and immediately after the debtor files the petition. But each case is different; each develops in different ways. Some cases have difficulties that surface over and over, necessitating multiple court hearings or several adjourned meetings of creditors. An attorney cannot know, within a month after the debtor files the petition, just how much time a particular matter will take. Of course, if an attorney agrees with a client that the attorney will handle only a few specified matters in exchange for the fee, it is much easier for that attorney to predict his time. But the Court will discuss that issue–the scope of services–in further detail later in this opinion.

12

2.    *Rate Charged*

The rate debtors' counsel charged for the firm's services in these cases is not out of the ordinary.  Indeed, the fact that counsel charged the presumed reasonable fee indicates that he charged a fee similar to that charged by other Chapter 13 debtors' counsel for the same kind of work.  In a sense, the presumed reasonable fee is almost a "customary" fee for this district.

3.    *Necessity / Benefit of Services*

The services debtors' counsel provided up to the date of the hearing appear to have been necessary to the administration of the case—meeting with the debtor, preparing the schedules and other paperwork, attending the meeting of creditors. These are some of basic services one would expect a Chapter 13 lawyer to provide. Counsel was not assisting the debtors in obtaining a divorce or fighting a traffic ticket—his services up to the date of the hearing were well within the realm of the kind of work necessary to move a Chapter 13 forward.

4.    *Reasonableness of Time Spent*

As to whether the services were provided within a reasonable amount of time given the type of case, the services provided up to the date of the hearing were timely.  What happens going forward, again, remains to be seen.

5.    *Skill Level of Professional Providing Services*

Regarding the skill level of the professional, counsel in these cases is an experienced bankruptcy practitioner who frequently appears in the Eastern District

13

courts. Counsel has demonstrated "skill and experience in the bankruptcy field."

      6.    *Preclusion of Other Employment*

Did counsel's acceptance of these cases preclude his being employed by others? That's a difficult question to answer. Because attorneys can handle only a finite number of matters, every case an attorney accepts theoretically means that the attorney is precluded from taking another case. These two matters, however, do not appear to be the kinds of matters that would require counsel to give up a great portion of his current practice due to their complexity.

      7.    *Unusual Restrictions*

Finally, the record is devoid of evidence on questions such as whether the clients or other circumstances placed unusual time restrictions on counsel, the length and nature of counsel's relationship with the debtors, and the desirability of the cases.

Application of the factors discussed above does not point strongly toward a conclusion that the $2,500 fee was unreasonable–as far as that reasoning goes. There is, however, more for the Court to consider.

    B.    <u>Concerns of the Trustee</u>

      1.    *Relationship Between Fee and Payment to Unsecured Creditors*

The trustee determined that, if counsel received the requested $2,500 fee, only $475 would be left (after trustee's fees) to distribute to other creditors in the Baldewicz matter and only $380 would be left to distribute to the creditors in the

14

Maxwell matter. She argued that this sort of arrangement stymied the purpose of a Chapter 13 petition–that is, to maximize repayments to creditors.

Interestingly, the impact of the professional's fee on the remaining creditors is not one of the factors listed in § 330 or in the case law. Regardless of that fact, however, case law demonstrates that it is appropriate–indeed, necessary–for the trustee to look at the impact of the requested fee on the estate. As Judge France pointed out in <u>Smith</u>,

> A court's "overriding obligation" when examining a professional's fee application is to "'protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors.'" *[In re] Busy Beaver [Building Centers, Inc.*, 19 F.3d 833 [at 844 [3rd Cir. 1994]. *See also In re Truong*, 259 B.R. 264, 267 (Bankr. D.N.J. 2001) ("bottom line consideration" should be whether fee is fair; both to professional whose fee is sought, as well as to debtor and creditors). In awarding fees, a bankruptcy court is interested in not only adequately compensating attorneys in order to encourage competent counsel to choose bankruptcy as an area to practice, "but in insuring that the costs of administration do not consume all of the assets that would have been available to creditors." *In re Columbia Plastics, Inc.*, 251 B.R. 580 (Bankr. W.D. Wash. 2000). In making a fee determination, the court must take into consideration whether the professional exercised "reasonable billing judgment." *In re Grosswiler Dairy, Inc.*, 257 B.R. 523, 528 (Bankr. D. Mont. 2000); *In re Mednet*, 251 B.R. 102 (9th Cir. BAP 2000). "The court's responsibility to protect the estate is especially important in Chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance." *In re Szymczak*, 246 B.R. 774, 778 (Bankr. D.N.J. 2000).

<u>In re: Smith</u>, 331 B.R. 622, 628 (Bankr. M.D. Penn. 2005).

Judge Larry Lessen of the Central District of Illinois considered this concern in <u>In re: Bond</u>, 271 B.R. 590, 594 (Bankr. C. D. Ill. 2000). After discussing the

15

efficiencies achieved by the use of presumptively reasonable fees, Judge Lessen

went on to observe:

> One disadvantage of having a [presumptively reasonable] fee is that, as in the cases before the Court, the [presumptively reasonable] fee becomes the minimum fee. Chapter 13 debtors are required to devote income in excess of reasonable monthly expenses to their Chapter 13 plan. Once this amount is determined, it then becomes the fixed monthly payment devoted to funding the Chapter 13 plan. Consequently, the debtor normally no longer has a financial interest in these funds or in how they are distributed. The trustee's statutory fee is determined as a percentage of the amount paid into the plan, and that fee is not affected by the attorney's fee. Accordingly, there is no incentive to the attorney or to the trustee to limit or restrict the attorney's fee and, as a result, the highest allowable fee is almost always requested. In actuality, it is the unsecured creditors who bear the brunt of this system because it is their dividend which is adversely affected by higher attorney fees. Because the dividend being paid to most unsecured creditors is modest, the system is not set up to encourage unsecured creditors to contest applications for fees. Thus, the only protection afforded to the interests of unsecured creditors must come from the Court.

Id.

For these reasons, it is of concern to the Court that if counsel ultimately

obtains the $2,500 fee, he will obtain a larger sum in these cases than, it appears,

will the unsecured creditors.   On the other hand, the Court must take into account

the fact that what an attorney has to "sell" as a service to his clients is his time, and

the time of his staff.  Certain tasks take a certain amount of time, whether their end

result nets $1 or $100,000 for the estate.  Some cases, despite all of counsel's and

the debtor's best efforts, net $0.00 for the estate, but that does not mean that the

attorney should not receive payment for services honestly and competently

16

rendered.  As the Seventh Circuit has noted,

> . . . Being frugal with fees in bankruptcy cases is admirable as what
> bankruptcy assets there may be are not for the welfare of the
> bankruptcy bar.  The fees, however, should be fair and reasonable
> depending on the facts and circumstances in each case.  All lawyers are
> expected to do some pro bono work as part of their professional
> responsibilities, but there is no need on a regular basis to require a
> degree of pro bono work in Chapter 13 cases.  It must be borne in mind
> that bankruptcy involves limited assets, but the consequences of
> continued unreasonably low fees might affect the rendering of prompt
> and good legal services which could be detrimental to debtors,
> creditors, and the courts, as well as the bankruptcy bar.

In re: Kindhart, 160 F.3d 1176, 1178 (7th Cir. 1998), *appealed after remand*, 167

F.3d 1158 (7th Cir. 1999).

Thus, any Court reviewing the reasonableness of fees must balance the need

to protect the estate with the need to avoid placing Chapter 13 debtors' counsel in

the equivalent of indentured servitude.  In these two instances, it is too early to tell

which way this balance tips.  If debtors' counsel puts in a reasonable amount of time

(as judged either by the activity on the docket or by the fee application) on the

matter, and the case simply does not yield a significant pay-off to the unsecured

creditors, then so be it.  But a month or so into the case is too soon to determine

whether the amount of time the attorney has put in is, in fact, reasonable enough to

justify the $2,500 fee.

     2.    *The Incomplete Nature of the Itemized Fee Application*

The trustee also argued that the one accounting which counsel submitted

before the hearing indicated that, as of the date of the hearing, only $1,500 in fees

had been generated–the remainder of the accounting was the firm's estimate of how much work was left to be done. This certainly was true, but given the fact that the trustee made her objection one month after the debtor filed the petition, the debtor's attorney had little choice. A Chapter 13 case may live, if the debtor makes it to the end of the plan, as long as five years. During that time, any number of things may happen to complicate matters. A Chapter 13 debtor's attorney is not necessarily finished with his or her work at the end of the § 341 meeting of creditors. The attorney may need to object to claims. Creditors may file motions which require responses. The debtor's circumstances may change, necessitating modifications of plans, surrender of property, or other action by counsel. The fact that the debtor's counsel estimated future fees, therefore, does not greatly concern the Court.

The trustee further argued that counsel could have filed an application for the $1,500 earned pre-filing, then filed a supplemental fee request upon earning anything beyond that amount. While the trustee did not argue the point in this way, one might construe this argument to imply that debtors' counsel may demand the presumed reasonable fee of $2,500 only when they actually have earned at least that much by the time they disclose their compensation–in other words, by the time they file the petition. The logical extension of this argument is that in any case in which counsel cannot demonstrate accrual of $2,500 worth of earned fees by the date the petition is filed, he or she must file a fee application.

This likely would be the procedure if the district did not have a presumptively

18

reasonable fee–attorneys would file a fee application asking for the fees earned at the time of filing, and then would file a supplemental fee application for all work done thereafter. But adopting such a procedure across the board would undercut the purpose of having a presumptively reasonable fee. The presumed reasonable fee allows debtors' counsel to apply for the presumptively reasonable amount without having to prepare a detailed fee application, allows trustees to know that judges find such a fee reasonable for comprehensive and competent work in a run-of-the-mill Chapter 13 matter, and gives courts a guideline for reviewing fee objections. Hopefully all parties achieve efficiencies under this system–efficiencies which would be lost if counsel could request the presumed reasonable fee only upon proving that it had been earned in full.

### 3. *The Complexity of the Work Involved*

The trustee characterized the debtors' cases as simple, straight-forward Chapter 13 matters. The trustee noted that there were few assets involved in these cases (thirteen in Baldewicz, eight in Maxwell), no real estate, only one piece of secured collateral in Baldewicz (which the debtor chose to surrender) and no secured collateral in Maxwell. It makes sense that such cases would take less time, and be less work, than a case involving five pieces of real estate, numerous assets and various pieces of secured collateral. This argument–the argument that the presumptively reasonable fee is somehow tied to the complexity of the particular case–goes to the heart of one of the principles behind the establishment of

19

presumptively reasonable fees.

A presumptively reasonable fee is a base line, not a cap. *See* <u>In re: Day</u>, 222 B.R. 587, 594-595 (Bankr. C. D. Ill. 1997) (". . . the [presumptively reasonable] figure is not a cap on fees, but rather the point at which a Chapter 7 attorney must start showing the Court that the attorney is worth the money.") Attorneys may request more than $2,500 to handle a Chapter 13 in this district, but they must file a fee application to obtain the higher amount.

This implies that a presumptively reasonable fee is a fee that the court feels is reasonable to charge for a routine Chapter 13 case. The fact that a case is routine, and does not give rise to all sorts of thorny issues, does not seem–in and of itself–to be a reason to find the presumptively reasonable fee excessive. Indeed, at least one court has held that presumptively reasonable fees are most appropriately rewarded in run-of-the-mill cases. In <u>In re: Bond</u>, 271 B.R. 590, 593 (Bankr. C. D. Ill. 2000), Judge Lessen stated that "[o]ne of the purposes of setting the [presumptively reasonable fee] for routine Chapter 13 cases was to save the attorney and the Court time when dealing with the large volume of cases which are simple, straightforward, routine, and contain no new issues of law." Judge Lessen indicated that in these kinds of cases, a presumptively reasonable fee keeps "the Court, its staff, the standing trustee, and the U.S. Trustee" from having to "review every petition for fees." <u>Id.</u>

On the other hand, few would argue that it is reasonable for an attorney to be

20

paid $2,500 if he performed little or no work. If every single debtors' attorney who ever filed a Chapter 13 petition in the Eastern District could automatically receive $2,500, with no questions asked, the Court would fail dismally in its obligations to the bankruptcy estate and the interests of the creditors. Again, then, while the notion of a presumptively reasonable fee seems to contemplate that such a fee will be appropriate in "routine" cases, it does not make sense–and is not appropriate–to ignore completely the reality of how much service counsel actually provides a debtor.

Some courts have resolved this issue–the question of whether the presumptively reasonable fee should be adjusted for the complexity of the case–by listing certain standard services that counsel must provide in order to earn the presumptively reasonable fee. As Judge France noted in <u>Smith</u>, "In several jurisdictions in California and in the Northern District of Georgia, use of a no-look fee is contingent upon the execution of a 'Rights and Responsibilities' form in which both the attorney and the client pledge to perform certain duties." <u>In re: Smith</u>, 331 B.R. at 629-630, *citing* <u>In re: Eliapo</u>, 298 B.R. 392, 401 n.15 (9th Cir. BAP 2003). This Court has looked at the "Rights and Responsibilities" form from the Northern District of Georgia,[5] and noted that while it listed a number of services attorneys

---

[5] One can view the "Rights and Responsibilities Statement Between Chapter 13 Debtors and Their Attorneys" at the Northern District's web site, http://www.ganb.uscourts.gov/geninfo/genorders/general_order_3-2005.pdf. It lists such services as providing advice to the debtor at various stages of the proceedings, timely preparing and filing schedules and plans, representing the debtor at the meeting of creditors, filing motions to buy or sell property or incur debt, etc. All in

21

are required to provide, it does not make payment of the presumptively reasonable fee contingent upon the complexity of the matter.

A rule which allows counsel to request the presumptively reasonable fee only when he is handling a case of sufficient complexity would be difficult to enforce. How does one determine when a case is sufficiently complex to justify the presumptively reasonable fee? In these cases, the trustee argued that there were only thirteen (13) assets in Baldewicz and eight (8) assets in Maxwell. How many assets would a debtor have to have for the attorney to be able to claim the presumptively reasonable fee? Must the debtor own real estate? Must the estate be of a certain size? It is difficult to determine where one might draw the line.

Further, the fact that a debtor has only a small number of assets does not necessarily mean that the Chapter 13 proceedings will not be complex. Even a debtor with a small number of assets may find his counsel attending two, three or more meetings of creditors, may find himself subject to Rule 2004 examinations, may find himself objecting to one or more claims, may face an objection to confirmation. For all of these reasons, linking the presumptively reasonable fee to the complexity of the case does not seem practical.

4.     *Scope of Services Provided*

While complexity of the case, then, is not a good measure for judging the reasonableness of the $2,500 presumptively reasonable fee, the Court can't help but

---

all, the Statement lists eight (8) services an attorney must provide pre-petition, and seventeen (17) services the attorney must provide post-petition.

pause and reflect on the idea of linking the $2,500 fee to the provision of certain specific, enumerated services. This is the approach that the Northern District of Georgia takes. This idea is particularly attractive in light of one of the reasons that the presumptively-reasonable fee in this district now is $2,500.

Prior to the enactment of BAPCPA, the presumptively reasonable fee for Chapter 13s in the Eastern District was $1,500. During the time between passage of BAPCPA in April of 2005 and its implementation on October 17, 2005, the judges of this district discussed whether they should raise the amount of the presumptively reasonable fee from $1,500. During this discussion, the judges talked about several factors that might warrant raising the fee. One of these factors was the perception that doing Chapter 13 work under the new requirements of BAPCPA would be more time-consuming than it was in the pre-BAPCPA days. Another of these factors was the fact that the fee had been $1,500 for some time, and might be due for a change.

Another factor that the judges discussed, however, was their collective concern that the range of services different debtors' counsel agreed to perform in exchange for the presumptively reasonable fee varied greatly. Some debtors' counsel asked for the presumptively reasonable fee in exchange for representing a debtor "cradle-to-grave"–that is, for every issue that might come up in a Chapter 13 except an adversary proceeding (a nondischargeability lawsuit). Other debtors' counsel, however, requested that same presumptively reasonable fee in exchange for the work done only up until the meeting of creditors. This latter group of attorneys

required that anything that happened after the meeting of creditors–defense of motions to lift the stay, objections to claims, defense against objections to confirmation or to discharge, preparation of reaffirmation agreements, etc.–must be paid for separately, over and above the presumptively reasonable fee.

The practice of this latter group caused concern among the judges. The practice yielded instances–not infrequent–in which the judges found themselves faced at a lift-stay hearing or a hearing on objection to confirmation with a debtor who had, on the date the petition was filed, been represented by counsel, but who now appeared *pro se*. The judge often had no way of knowing that the attorney no longer represented the debtor, because the attorney had not filed a motion to withdraw. Sometimes the judge would set the hearing over until the end of the calendar, thinking that the attorney was running late, only to find that the attorney considered himself or herself off the case. Other times the debtors themselves did not realize that they had purchased only a set package of services, and were confused about why their counsel was not present.

The judges hoped, in raising the presumptively reasonable fee, that for $2,500, the majority–if not all–of the Chapter 13 attorneys who practice regularly in this district would provide cradle-to-grave service for their clients (again, excepting adversary lawsuits). Admittedly, this hope does not appear anywhere in the district's written policy on presumptively reasonable fees. Nonetheless, the judges hoped that the fee increase would result in more cradle-to-grave representation.

In responding to the objection to fees, counsel for the debtors in this case argued that his firm is one of the few in the Eastern District that represents Chapter 13 debtors from cradle to grave. Counsel argued that his firm stays on board until the end of the matter. If this were, in fact, the case, it would make the trustee's argument somewhat more difficult.

The Court notes, however, that if the Forms B201 counsel filed in these two cases contain an accurate representation of the services the firm provides, then the firm *does not*, in fact, represent these two debtors cradle-to-grave. The Forms B201 clearly state that the fee *does not* include "[r]epresentation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding."

This provision is interesting. It first states that the fee does not include representing the debtor in "any dischargeability actions." Presumably this refers to what bankruptcy practitioners know as "adversary" proceedings–mini-lawsuits within bankruptcy cases, where a party files a civil complaint suing another party on the grounds that a particular debt cannot be discharged under the provisions of the bankruptcy laws. Bankruptcy lawyers (and judges) view these mini-lawsuits as being somewhat different from the kinds of proceedings that come up during the normal life of a Chapter 13 bankruptcy. The mini-lawsuits look much more like non-bankruptcy civil suits: they are, as the name implies, adversarial, one party against another, as opposed to the multi-party process in bankruptcy proceedings;

25

they begin with the filing of a complaint, followed by answer; they require routine civil discovery (depositions, interrogatories, requests for admission) which the motion practice in the underlying bankruptcy generally does not; they may end in trials, rather than simple evidentiary hearings on motions. In fact, non-dischargeability adversaries are so much more like civil lawsuits than bankruptcy proceedings that parties to adversary proceedings sometimes hire separate civil litigation counsel for those proceedings, rather than having their bankruptcy lawyer handle them.

Thus, it is no surprise that debtors' counsel does not include adversary proceedings in the list of services he agrees to provide in exchange for the presumptively reasonable fee. The Court would not expect representation in an adversary to be part of the services provided for that fee.

The Forms B201 in this case further provide, however, that the presumptively reasonable fee does not include "relief from stay actions or any other adversary proceeding." This provision is more troubling. The Court does not consider "relief from stay actions" to be "adversary proceedings" as that term was discussed above. When a creditor seeks relief from the automatic stay in a Chapter 13 matter, he does so under Fed. R. Bankr. P. 9014, which governs "contested matters." Pursuant to the rule, the creditor files a *motion* requesting that relief. If the debtor disagrees, the debtor files an objection (often, in this district, a three- or four-line objection with no legal authority cited). The parties then come into court

and, more often than not, present argument, with the judge resolving the issue right from the bench. Motions to lift the stay are extremely common in Chapter 13 practice; on any given Chapter 13 motion day, a good portion of the cases the Court hears consists of lift-stay motions.

It is troubling, then, that it appears that counsel's firm does not include defending a debtor against a lift-stay motion as a service the firm provides as part of the $2,500 fee. While a contested matter sometimes can be as time-consuming and fiercely fought as an adversary proceeding, such a matter also goes to the very heart of whether a Chapter 13 is likely to succeed or fail. The same reasoning applies to defense of motions to dismiss the case–another contested matter not mentioned in the Forms B201.

For similar reasons, the Court is troubled to note that there does not seem to be any mention in the Forms B201 of defending the debtor if there is an objection to confirmation of a Chapter 13 plan. Again, if a party does not believe that the debtor's plan meets the requirements of the bankruptcy code, that party files an objection. In this district, the debtor need not even reply–the courts automatically set a hearing date for objections to confirmation. Usually the attorneys present argument, and the courts resolve the issue from the bench. These are not "adversary proceedings"–they are routine matters that are likely to pop up in any Chapter 13 matter.

Another common procedure not mentioned in the Forms B201 is an objection

27

to a claim. If a creditor submits a claim asserting that it is owed a certain amount for a certain debt, and the debtor disagrees, the debtor's attorney may file an objection to that claim. The relevant court will hold a hearing–sometimes an evidentiary hearing–and decide (often from the bench) who should prevail. There is no mention in these Forms B201 of whether the filing of objections to claims is part of the package of services covered by the presumptively reasonable fee–in spite of the fact that such objections are not "adversary proceedings" and are not uncommon.

These and other issues arise commonly in a routine Chapter 13. Yet it does not appear that counsel's firm includes representation for these matters in the package of services it provides for the presumptively reasonable fee. This circumstance does not comport with the Court's understanding of "cradle-to-grave" representation.

Counsel for the debtor argued that his firm does a good job for its clients–a fact the trustee did not dispute. The Court's concerns do not relate to the quality of the advice debtors' counsel provides its clients–these are not cases in which counsel has committed any obvious errors, such as missing the deadline for filing schedules or failing to attend the meeting of creditors.. Rather, the Court's concerns relate to the limited range of services the firm *appears* to provide in exchange for what is a not-insubstantial presumptively reasonable fee.

The Court emphasizes the word "appears." It is not clear whether the

28

impression the Court has gotten from reviewing the Forms B201 in these cases is accurate. Perhaps debtors' counsel does provide, as part of its presumptively-reasonable fee package, some or all of the services the Court has discussed. For this reason, the Court is reluctant to conclude at this stage that the $2,500 is unreasonable in these cases. But this Court will be more apt to sustain an objection to the presumptively reasonable fee in the future in cases where debtors' lawyers agree to provide only a handful of relatively simple services in exchange for that fee.

IV. **Conclusion**

When the Court asked at the June hearing whether there was a possibility that her office could review fees later in the Chapter 13 process, the trustee indicated that this procedure would present difficulties in her office. The office has set up its procedures to review the fees, among other things, early on in the case. The trustee indicated that by the time a case is nearing its end, there is little for the trustee to do except close out the file. To move the fee review process later in the proceedings would be difficult for the trustee, she indicated.

This Court has no wish to further burden the Chapter 13 trustee's office—it is, the Court recognizes, an office with a great deal on its plate, particularly since the implementation of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). BAPCPA imposed numerous new duties on the trustees, but gave them no new resources to help them accomplish those duties. The trustee's role is vital to the efficient and fair operation of the bankruptcy system, so it is

equally vital that the trustee be able to operate efficiently. Nonetheless, this Court believes that *in these two instances*, it was too soon to evaluate the reasonableness of this debtors' attorney's fees a month into the cases.

The Court emphasizes, however, that this conclusion does not imply that the trustee must wait to analyze the reasonableness of the presumptively reasonable fee in all cases. There will be–in fact, there undoubtedly *are*–those cases in which it is obvious almost immediately that the $2,500 fee is not warranted. Since the implementation of BAPCPA, this Court–doubtless joined by other courts across the country–has witnessed lawyers who blow the deadline for asking that the stay be extended under § 362, lawyers who have failed to understand and abide by the 45-day deadline set by § 521(i), lawyers who have failed to inform their clients about the credit counseling requirement in § 109. The Court has seen lawyers who fail to do something as simple as timely file schedules, and then fail to request an extension of time to do so. These are cases in which there is a question, within the very early days of the case, as to whether the lawyer did the minimum amount necessary to represent a client in the BAPCPA world.

Thus, the trustee *should* be scrutinizing fee applications early on to determine whether fees–including presumptively reasonable fees of $2,500–are, in fact reasonable. The trustee *should*, in those cases in which the early going indicates that the attorney has not done the minimum necessary, object to the presumptively reasonable fee sooner rather than later. In the cases at bar,

Case 06-21226-pp    Doc 27    Filed 09/14/06    Page 30 of 31

however, the Court finds that the trustee objected too soon.

WHEREFORE, the Court hereby OVERRULES the trustee's objection to fees of debtors' counsel as premature. If, at a date further along in the proceedings, the trustee feels such an objection is appropriate, the Court will entertain a renewed objection at that time.

SO ORDERED this 14th day of September, 2006.

HON. PAMELA PEPPER
United States Bankruptcy Court

Cc:  Robert Edward Baldewicz, III
     Debtor

     Doris Marie Maxwell
     Debtor

     Michael J. Watton
     Gary Koch
     Counsel for the Debtors

     Mary B. Grossman
     Standing Chapter 13 Trustee

     Rebecca Rogers Garcia
     Office of the Chapter 13 Trustee

     Office of the U.S. Trustee

31